## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 23 2018, 8:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| David W. Stone, IV<br>Anderson, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Matthew B. Mackenzie<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jose G. Echartea-De La Suente,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 23, 2018<br><br>Court of Appeals Case No.<br>48A02-1706-CR-1280<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable David A. Happe, Judge<br><br>Trial Court Cause No.<br>48C04-1212-FA-2249 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Jose G. Echartea-De La Suente (Echartea-De La Suente), appeals his conviction for two Counts of child molesting, Class A felonies, Ind. Code § 35-42-4-3(a)(1); two Counts of child molesting, Class C felonies, I.C. § 35-42-4-3(b); and one Count of attempted child molesting, a Class C felony, I.C. §§ 35-42-4-3(b); -41-5-1.

We affirm.

# ISSUES

Echartea-De La Suente presents us with three issues on appeal, which we restate as:

(1) Whether the State presented sufficient evidence beyond a reasonable doubt to support Echartea-De La Suente's conviction for one Count of child molesting as a Class A felony;

(2) Whether the trial court abused its discretion in sentencing Echartea-De La Suente to an aggregate sentence of seventy years based on multiple aggravating factors and no mitigating factors; and

(3) Whether his aggregate sentence is appropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

[4] In 2005, C.S., then nine years old, was living with her mother, her younger sister O.M., her younger brother J.M., and her grandmother in Anderson, Indiana. C.S.'s mother was dating Echartea-De La Suente and he would visit occasionally; they married in 2009. On one such visit, C.S., along with Echartea-De La Suente, her mother, sister, brother, and cousin, T.K., were all sleeping in her mother's bedroom. C.S. was between T.K., who was facing away from C.S. playing a Gameboy, and Echartea-De La Suente. While everyone was asleep with the exception of T.K., Echartea-De La Suente started to "rub [C.S.'s] shoulder down to [her] leg and then, eventually, he made his way down inside [her] pants and started fingering and putting his finger in [her] vagina continuously." (Transcript Vol. II, p. 52). C.S. "tried to close [her] legs as tight as [she] could." (Tr. Vol. II, p. 52). The next day, C.S. informed T.K. of what had happened. She did not tell her mother because "[a]s a child [she] had seen [her] cousin get taken away into foster care and [she] just didn't want anything to change between [her] family." (Tr. Vol. II, p. 52).

[5] In 2010, Echartea-De La Suente started molesting C.S.'s younger sister, O.M., who was then eleven years old. At that time, O.M. shared a bedroom with her brother, C.S. had her own bedroom, her mother and Echartea-De La Suente shared a room, and O.M.'s grandmother slept on the couch. At night, Echartea-De La Suente entered O.M.'s bedroom and "got in [O.M.'s] bed." (Tr. Vol. II, p. 68). "[H]e put his hand under [her shirt] and" started rubbing her breasts and vagina. (Tr. Vol. II, p. 68). O.M. did not tell anyone what had

happened because she was afraid. Echartea-De La Suente continued to molest her "almost every night." (Tr. Vol. II, p. 70).

[6] Eventually Echartea-De La Suente escalated his behavior. After he had touched O.M.'s breasts and rubbed her vagina, he lifted up O.M.'s shirt and started kissing her back. He tried to kiss O.M. on her mouth but she "was holding [her] teeth closed, so he pulled down [her] pants and [her] underwear to [her] ankles." (Tr. Vol. II, p. 71). O.M. tried to get up "but he held [her] down and he started licking [her] vagina." (Tr. Vol. II, p. 71). The following morning, O.M. wrote her friend a note about the incident and asked her friend to give the note to O.M.'s mother because O.M. was too embarrassed and afraid to hand her the note herself. After O.M.'s mother read the note, mother became angry and started "yelling at [O.M.] because [she] told [her friend] and it could've gotten [her] brother and [her] sister taken away, and the house taken away, and [O.M.] taken away." (Tr. Vol. II, p. 74).

[7] On another occasion, O.M. was alone in the living room as she had just gotten up and her mother and grandmother had left to get breakfast. C.S. and her brother were still asleep. O.M. was on the couch watching television when Echartea-De La Suente "came in and laid behind" her. (Tr. Vol. II, p. 75). O.M. immediately got up and started walking to her room. However, Echartea-De La Suente "grabbed [her] and took [her] to [his] room" where he threw her on the bed. (Tr. Vol. II, p. 75). As he tried to pull O.M.'s pants down, she pushed him off and ran to her room, locking her bedroom door. Echartea-De La Suente tried to break into her bedroom by using a credit card to

open the door. Through the door, he was telling O.M. that if she "didn't let him in that [her] mom was going to be mad at [her]." (Tr. Vol. II, p. 75). When he realized that he could not get inside, Echartea-De La Suente went to the bathroom to take a shower. O.M. texted her mother about the incident but "nothing really happened." (Tr. Vol. II, p. 76). O.M. disclosed the abuse to T.K. and T.K. began sleeping in O.M.'s room "to protect" her. (Tr. Vol. II, p. 124).

[8] With the exception of grandmother and C.S., the family moved to a new apartment. There, O.M.'s mother questioned O.M.'s attitude, and O.M. told her that she was continuously angry because her mother knew Echartea-De La Suente had molested her, yet refused to do anything. O.M. disclosed the abuse to law enforcement after mother took O.M. to the emergency room for an examination.

[9] On December 4, 2012, the State filed an Information, charging Echartea-De La Suente with two Counts of child molesting as Class A felonies, two Counts of child molesting as Class C felonies, and one Count of attempted child molesting, as a Class C felony. However, Echartea-De La Suente had left Indiana and was wanted on a warrant for approximately four years. On April 6, 2017, after his arrest and extradition to Indiana, Echartea-De La Suente was found guilty as charged following a jury trial. On May 22, 2017, the trial court conducted a sentencing hearing. At the close of the evidence, the trial court sentenced Echartea-De La Suente to thirty-five years each on the two Class A felonies, to be served consecutively, and four years on each of the Class C

felonies, to be served concurrently to the Class A felonies, for an aggregate sentence of seventy years.

[10] Echartea-De La Suente now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

[11] Echartea-De La Suente contends that the State failed to present sufficient evidence beyond a reasonable doubt to sustain his conviction for Count I, the Class A child molestation pertaining to C.S.[1] Our standard of review for a sufficiency of the evidence claim is well settled. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *Moore v. State*, 869 N.E.2d 489, 492 (Ind. Ct. App. 2007). We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Id*. The conviction will be affirmed if there is substantial evidence of probative value to support the conviction of the trier of fact. *Id*. It is well-established that "the uncorroborated testimony of one witness may be sufficient by itself to sustain a conviction on appeal." *Scott v. State*, 871 N.E.2d 341, 343 (Ind. Ct. App. 2007) (*citing Toney v. State*, 715 N.E.2d 367, 369 (Ind. 1999)), *trans. denied*.

---

[1] Echartea-De La Suente does not challenge the sufficiency of the evidence on his other charges.

[12] To convict Echartea-De La Suente of Class A felony child molesting, the State had to establish beyond a reasonable doubt that Echartea-De La Suente, being at least twenty-one years of age, "knowingly or intentionally perform[ed] or submit[ted] to sexual intercourse or other sexual misconduct" with a child under fourteen years of age. *See* I.C. § 35-42-4-3(a). Here, C.S., being nine years old at the time of the molestation, testified that Echartea-De La Suente rubbed her shoulder, then her leg, and then proceeded "fingering or putting his finger in [her] vagina continuously." (Tr. Vol. II, p. 52). She described that Echartea-De La Suente put his finger "all the way inside" her vagina and that she "just tried to close [her] legs as tight as [she] could." (Tr. Vol. II, p. 52).

[13] Echartea-De La Suente now challenges C.S.'s testimony as incredibly dubious. Specifically, he asserts that "[i]t is contrary to human experience that an adult would attempt to molest a child with that many potential witnesses in close proximity and one of whom was awake playing a game." (Appellant's Br. p. 12). Under the incredible dubiosity rule, "a court will impinge on the jury's responsibility to judge the credibility of the witnesses only when it has confronted 'inherently improbable' testimony or coerced, equivocal, wholly uncorroborated testimony of 'incredible dubiosity.'" *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) (citing *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994)). A court will impinge upon a jury's duty to judge witness credibility "where a *sole witness* presents inherently contradictory testimony which is equivocal or the result of coercion and there is a *complete lack of circumstantial evidence* of the appellant's guilt." *Moore*, 27 N.E.2d at 755.

[14] We find the incredible dubiosity rule inapplicable to the case at hand. Even though we agree with Echartea-De La Suente that T.K. was not a witness as she failed to observe the molestation, we cannot agree that C.S.'s trial testimony was "inconsistent within itself." *See id.* at 758-59. Even under cross-examination, C.S. was consistent in her responses and confident in what had happened that night. The jury was free to decide whether "to believe or disbelieve" C.S. *See Murray v. State*, 761 N.E.2d 406, 409 (Ind. 2002). Furthermore, it is not uncommon for child molesters to offend when other people are in the home or even in the same room. We agree with the State that the decision to commit a crime in the presence of potential witnesses without first isolating the victim does not make the commission of that crime improbable. Accordingly, as the State presented sufficient evidence to sustain Echartea-De La Suente's conviction for Class A felony child molesting, as pertaining to C.S., we affirm the trial court's decision.

## II. *Aggregate Sentence*

[15] Next, Echartea-De La Suente contends that the trial court abused its discretion in sentencing him to an aggregate sentence of seventy years based on "improper aggravating factors and the failure to recognize the lack of any real criminal history as a mitigating factor." (Appellant's Br. p. 16). Sentencing decisions are a matter of trial court discretion and are reviewed on appeal only for an abuse of that discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490, *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). A trial court abuses its discretion if its decision "is 'clearly against the logic and effect of the facts and circumstances

before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id.* (quoting *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006)). A trial court "may impose any sentence within the statutory range without regard to the existence of aggravating or mitigating factors." *Id.* at 489. If the trial court "'finds' the existence of 'aggravating circumstances or mitigating circumstances' then the trial court is required to give 'a statement of the court's reasons for selecting the sentence that it imposes.'" *Id.* at 490 (quoting I.C. § 35-38-1-3(3)).

[16] On appeal, a trial court may be found to have abused its discretion by failing to enter a sentencing statement at all; entering a sentencing statement that explains its reasons for imposing a sentence where such reasons are not supported by the record or are improper as a matter of law; or entering a sentencing statement that omits reasons which are clearly supported by the record and advanced for consideration. *Id.* at 490-91. A trial court does not abuse its discretion by failing to properly weigh aggravating and mitigating factors. *Id.* at 491. If we find that the trial court has abused its sentencing discretion, our court will remand for resentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.*

[17] Child molesting as a Class A felony is punishable by a fixed term of between twenty and fifty years, with the advisory sentence being thirty years. *See* I.C. § 35-50-2-4(a). Echartea-De La Suente's Class C felonies are punishable for a fixed term of between two and eight years, with the advisory sentence being four years. *See* I.C. § 35-50-2-6. In this case, as factors warranting an

aggravated sentence, the trial court cited: 1) Echartea-De La Suente's prior criminal history; 2) multiple victims and multiple offenses committed over a very long period of time; and 3) Echartea-De La Suente's violation of his position of trust. The trial court specifically noted that it could "find no mitigation in the record" to weigh against several aggravators. (Tr. Vol. III, pp. 61-62). Accordingly, the trial court imposed an aggravated sentence of thirty-five years each on the Class A felonies, to be served consecutively, and the advisory sentence of four years on each of the Class C felonies, to be served concurrently to the Class A felonies, for an aggregate sentence of seventy years.

[18] Challenging the trial court's finding of all three aggravators, Echartea-De La Suente first contends that his criminal history should actually be considered as a mitigating factor as it only consists of operating a vehicle while intoxicated in 2008 and three operating while intoxicated offenses based on a single incident in 2012. Considering that Echartea-De La Suente did have "some prior criminal history," the trial court also recognized that this history is "[n]ot prior to these offense[s] being committed necessarily but prior to sentencing here today." (Tr. Vol. III, p. 61). While "the significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense," the trial court here merely noted Echartea-De La Suente's criminal record without awarding it significant weight. *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*. Accordingly, as the aggravator is supported by the record, the trial court properly considered Echartea-De La Suente's criminal history.

[19] Turning to the trial court's aggravator of "multiple victims and multiple offenses committed over a very long period of time," Echartea-De La Suente argues that the trial court improperly relied on "acts of molestation with which the defendant was not charged." (Tr. Vol. III, p. 61; Appellant's Br. p. 15). In this instance, Echartea-De La Suente alludes to the trial court's statement that "there is evidence from which the court can certainly conclude[], and does conclude, that there were more incidents that occurred than were charged in this case" to contend that the aggravator was improper. (Tr. Vol. III, p. 61). However, our review of the record indicates that the trial court explicitly identified the existence of multiple victims and multiple offenses committed over a long period of time as an aggravator, while the contested statement was merely an elaboration on the trial court's thought process. At no point did the trial court characterize these uncharged offenses as a separate aggravator.

[20] Lastly, Echartea-De La Suente disagrees about having ever been in a position of trust with the victims and thus also challenges this aggravator as improper. At the time of C.S.'s molestation in 2005, Echartea-De La Suente was dating C.S.'s mother and was a visitor at the residence. Apparently, he was close enough to the victims that C.S.'s mother allowed him to sleep in the bedroom with the entire family. In *Rodriguez*, we concluded that this type of behavior is sufficient to establish a position of trust. *Rodriguez v. State*, 868 N.E.2d 551, 555 (Ind. Ct. App. 2007) (holding that the position of trust aggravator applies when the defendant "has a more than casual relationship with the victim and has abused the trust resulting from that relationship" and that "generally,

cohabitation arrangements of nearly any character between adults do in fact, and should, establish a position of trust between adults and minors living or staying together"). Accordingly, we find that the trial court's consideration of this aggravator was appropriate.

[21] Insofar as Echartea-De La Suente argues that his thirty-five-year aggravated sentence for Count I, the child molestation of C.S., constitutes an abuse of discretion as it is supported by improper aggravators pertaining to this specific Count, we note that Indiana does not require trial courts to specify aggravators and make separate findings regarding each individual offense. In *Cardwell v. State*, 895 N.E.2d 1219, 1224-25 (Ind. 2008), our supreme court clarified that

> In the case of some crimes, the number of counts that can be charged and proved is virtually entirely at the discretion of the prosecution. For that reason, appellate review should focus on the forest—the aggregate sentence—rather than the trees— consecutive or concurrent, number of counts, or length of the sentence on any individual count.

[22] In sentencing Echartea-De La Suente to an aggregate sentence of seventy years, the trial court found multiple proper aggravating factors and no mitigating factors. Accordingly, we cannot say that the trial court abused its discretion in imposing an aggravated sentence.

## II. *Inappropriate Sentence Review*

[23] Echartea-De La Suente also claims that his seventy-year sentence is inappropriate. As we previously indicated, "'sentencing is principally a discretionary function in which the trial court's judgment should receive

considerable deference.'" *Parks v. State*, 22 N.E.3d 552, 555 (Ind. 2014) (quoting *Cardwell*, 895 N.E.2d at 1222). However, our court may revise a statutorily permissible sentence if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

[24] Appellate Rule 7(B) provides for sentence review in an "attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. Ultimately, "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id.* Echartea-De La Suente bears the burden of persuading this court that his sentence is inappropriate. *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014). Echartea-De La Suente seeks a reduction in his sentence to the minimum sentence on Count I and the advisory sentence on the other Counts, with all Counts to run concurrent, for an aggregate sentence of thirty years.

[25] With respect to the nature of the offense, "the advisory sentence is the starting point [that] our legislature has selected as [an] appropriate sentence for the crime committed." *Richardson v. State*, 906 N.E.2d 241, 247 (Ind. Ct. App. 2009). Here, the trial court sentenced Echartea-De La Suente to an aggregate,

aggravated term of seventy years. Echartea-De La Suente now claims that this is inappropriate because he "did not physically harm either of the girls. He did not have intercourse with either of them nor did he have either of them perform fellatio on him. His actions consisted of fondling, cunnilingus and digital penetration." (Appellant's Br. p. 18). However, our supreme court has held that "the absence of physical harm is not an automatic mitigating circumstance such that it would require a lesser sentence than would otherwise be imposed." *Neale v. State*, 826 N.E.2d 635, 638 (Ind. 2005). Echartea-De La Suente only received sentences above the advisory for his Class A felony Counts, both of which were aggravated by five years. *See* I.C. § 35-50-2-4(a).

[26] The record indicates that Echartea-De La Suente abused his position of trust with his two young victims, which allowed him to molest them over an extended period of time. Echartea-De La Suente initially molested C.S. by "continuously" inserting his finger into her vagina while she tried to resist by holding her legs together as tightly as she could. (Tr. Vol. III, p. 52). Gradually over time, Echartea-De La Suente's behavior escalated to the point where, in an attempt to molest O.M., he threw her on the bed in his room and, after O.M escaped, he attempted to break into her locked bedroom. At sentencing, O.M. testified that as a result of the prolonged molestation, she no longer has a relationship with her mother, had to switch schools several times, and was barely graduating.

[27] Turning to his character, the trial court noted that Echartea-De La Suente did not express any remorse; rather, he increased the victims' harm by fleeing the

state. "Years went by that the victims lived with the uncertainty of what was going to happen with these charges." (Tr. Vol. III, p. 61). He has shown contempt for the justice system as evidenced by his conscious decision to avoid turning himself in on a warrant for many years. Accordingly, we cannot say that Echartea-De La Suente's sentence is inappropriate in light of the nature of the offense and his character.

## CONCLUSION

[28] Based on the foregoing, we hold that: (1) the State presented sufficient evidence beyond a reasonable doubt to support Echartea-De La Suente's conviction for one Count of child molesting as a Class A felony; (2) the trial court did not abuse its discretion in sentencing Echartea-De La Suente to an aggregate sentence of seventy years based on multiple aggravating factors and no mitigating factors; and (4) his aggregate sentence is appropriate in light of the nature of the offense and his character.

[29] Affirmed.

[30] Baker, J. and Brown, J. concur